Leslie Maringer and Virgil Maringer for the use of Genevieve Argentina Del Boccio, Appellee, v. Bankers Indemnity Insurance Company, Appellant.

**Gen. No. 38,828.**

Opinion filed January 27, 1937.   Rehearing denied February 16, 1937.

Cassels, Potter & Bentley, of Chicago, for appellant; Ralph F. Potter, George C. Bunge and Leslie H. Vogel, all of Chicago, of counsel.

Hirsch E. Soble and Benjamin Weinberg, both of Chicago, for appellee.

Mr. Justice Hebel delivered the opinion of the court.

This is an appeal from a judgment for $3,529.50, entered in the superior court of Cook county in favor of Leslie Maringer and Virgil Maringer, defendants for the use of Genevieve Argentina Del Boccio, plaintiff, against Bankers Indemnity Insurance Company, garnishee.

The garnishment proceeding is based upon a judgment for $3,500 and costs entered on May 3, 1935, in favor of the plaintiff Genevieve Argentina Del Boccio and against the defendants Leslie Maringer and Virgil Maringer, upon which an execution was issued, served and returned unsatisfied on June 6, 1935.  The trial of the garnishment issues by the trial court resulted in a finding in favor of the plaintiff and against the garnishee, upon which, on November 8, 1935, the judgment appealed from was entered.

The pleadings upon which these issues were tried consisted of the plaintiff's interrogatories and the garnishee's answer thereto, and the evidence presented in the trial of the cause.

From the facts it appears that on June 11, 1932, the garnishee, issued its Automobile Public Liability Policy No. AP 224593 to the defendant Virgil Maringer. By this policy the company agreed, for a stated premium, to pay on behalf of Virgil Maringer, the named assured, within the limits fixed by the policy, all sums for which he should become obligated to pay by reason of liability imposed by law upon him for damages arising out of bodily injuries accidently suffered by any person, by reason of the ownership, maintenance and use of a certain Ford automobile owned by Virgil Maringer. The policy further provided that it should apply to any other person operating the automobile with the permission of the named assured, and contained other provisions usual to such policies, including a stipulation that no recovery should be had against the company, until the amount of the assured's obligation should have been rendered fixed and certain, and a proviso that the company should not be liable under the policy for claims arising from the use of the automobile for purposes other than those specified in the declaration, a part of the policy. The declaration included the statement that the insured automobile would be used for "Business and Pleasure," and would not be used "to carry passengers for a consideration, express or implied."

On January 3, 1933, the plaintiff was injured when struck by the Ford car scheduled in the policy, which was operated at the time by the defendant Leslie Maringer, brother of the defendant Virgil Maringer, the named assured. Plaintiff's declaration against both Virgil Maringer and Leslie Maringer alleges that

Leslie Maringer was operating the car with the permission and consent of, and as agent for, the defendant Virgil Maringer.

The claim was reported to the garnishee insurance company, which denied coverage on the ground that the automobile was being used at the time of the accident for purposes other than those specified in the declarations and provisions of the policy, but which finally undertook the defense of the case, after execution of a "non-waiver agreement" by both Virgil and Leslie Maringer. The non-waiver agreement is dated August 25, 1933, and provides that the defense of plaintiff's suit by the company, through its representatives, should be without prejudice to the rights of the company, and should not waive or affect any rights it might have to deny liability and withdraw from the case, and that such defense also should not waive or prejudice any rights of the assured under the policy. Pursuant to this agreement, plaintiff's suit was defended by attorneys employed by the company, and resulted in the judgment for $3,500 in favor of the plaintiff and against both Virgil and Leslie Maringer, upon which the garnishment proceeding is based.

Following the entry of the judgment, the defendants Virgil and Leslie Maringer, represented by the same attorneys, perfected an appeal to the Appellate Court of Illinois, and while the appeal was pending, plaintiff, on September 16, 1935, initiated this garnishment proceeding, which resulted in the judgment against the garnishee insurance company.

The defendants Virgil Maringer and Leslie Maringer, both called by the plaintiff, also testified on the trial of the garnishment issues. It appears from their evidence in the garnishment proceeding that Virgil Maringer, the named assured, had two businesses, or occupations, one as representative or agent for J. D. Watkins Company, manufacturers, and the other as

partner in a public dance hall, called the "Yellow Lantern," located on Harlem avenue, approximately three blocks north of Irving Park Boulevard, Chicago. The Irving Park bus line, an extension of the street car system, ran along Irving Park Boulevard. There were no houses or buildings in the neighborhood of the dance hall, nor were there any street lights on Harlem avenue in the three blocks between it and Irving Park Boulevard. A 25-cent admission fee was charged to patrons of the dance hall, some of whom were girls who came alone. Virgil Maringer and his partners owned a Studebaker car which they used to transport patrons between the bus line at Irving Park Boulevard and the dance hall, and advertised that transportation to the dance hall was furnished by the management. No extra charge in addition to the 25-cent admission fee was made for this service.

It will be necessary to consider the policy of insurance as written between the insurer and the insured in the instant case. It is known to this court that the appeal, Case No. 38,437 (286 Ill. App. 603 [Abst.]), which was pending in the Appellate Court from a judgment of $3,500 entered in the superior court of Cook county between Genevieve Argentina Del Boccio, as plaintiff, and Leslie and Virgil Maringer, as defendants, was affirmed, and from the records of this court it does not appear that further steps were taken by the defendants to present the matter to the Supreme Court of Illinois, and that the judgment at this time is a final one.

The judgment entered in that case is the result of a trial based upon the negligent operation by Virgil Maringer of the Ford automobile, which caused the injuries suffered by the plaintiff. It is upon this judgment that the garnishment proceeding was predicated. The liability of the garnishee is fixed by the insurance policy, which provides that the Bankers Indemnity Insurance Company is: "To pay on behalf of the As-

sured all sums (within the limits as expressed in the Declarations) which the Assured shall become obligated to pay by reason of the liability imposed by law upon the Assured for damages, including consequential damage resulting from loss of services and expenses, arising out of bodily injuries, and/or death resulting therefrom, accidently suffered, or alleged to have been suffered, by any person or persons, by reason of the ownership, maintenance and/or use of any of the automobiles described in said Declarations (including carrying of goods thereon and the loading and unloading thereof).''

The defense of the garnishee (defendant) is based largely on that part of the policy termed, ''Items of Declaration forming a part of the policy.'' In this declaration is included an item numbered 11, which is in these words: ''None of the insured automobiles will be used to carry passengers for a consideration, actual or implied,'' and is marked ''No Exceptions.'' The defendant contends that the accident in question was not covered by the policy, and points to the fact that the assured, Virgil Maringer, was engaged in business as a salesman for J. D. Watkins Company, manufacturers, at the time of the accident, and the use of the Ford automobile was for business and pleasure, and the term is defined as personal, pleasure and family use, including business calls; that the car at the time of the accident was used to carry passengers for a consideration, actual or implied.

The question is do the provisions of the policy exclude claims arising out of the accident which occurred to the plaintiff while walking upon a public highway. The question of negligence has been adjudicated in the litigation in the former appeal by this court affirming the judgment entered in the case for the recovery of damages, as we have indicated in this opinion. The question then is whether the operation of the automo-

bile by Maringer was in violation of the provisions of the policy.

The questions of fact, as we have stated above, were passed upon by the trial court, and the defendant seeks to avoid the payment of the judgment on the ground that the cause of action and resultant judgment is not covered by the terms of the insurance policy.

As a part of its defense the defendant points to what is known as the Guest Act, ch. 95a, par. 47 (5) Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 85.064 (1) and quotes therefrom as follows:

"No person riding in a motor vehicle as a guest, without payment for such ride, . . . shall have a cause of action for damages against the driver or operator of such motor vehicle or its owner or his employee or agent for injury . . . in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle or its owner or his employee or agent and unless such wilful and wanton misconduct contributed to the injury . . . for which the action is brought."

The reason for the passage of the act is called to the attention of the court by the defendant, and cases are cited bearing upon the question. It is doubtful whether such cases will be of aid upon the pending appeal.

The plaintiff in this action while a pedestrian upon a public highway was injured and is now seeking by this action to recover, and to apply the amount of the policy to satisfy the judgment entered in the action against the defendants for damages. Now then, the question is whether the defendant, Virgil Maringer, at the time of the accident was operating his car in violation of any of the provisions of the policy, in other words, carrying passengers for hire, and operating and using the automobile for the benefit of any one requiring such service. The facts do not bear out the asser-

tion that the automobile was operated for use of the public for a consideration such as would apply to one traveling as a passenger in a public conveyance for hire to be transported to a given point.

The facts in the case are that Virgil Maringer, the owner of the automobile, permitted his brother Leslie Maringer, on the night the accident occurred, to use his Ford automobile to take Roy Walker and Clyde Lanum, who were personal friends of Virgil Maringer, to their homes, Walker residing only a short distance from Irving Park and Harlem avenue. Other persons were standing at the dance hall, and they requested Leslie Maringer to take them in the automobile. Maringer testified, ''I saw some other people standing there. They asked me if they could go along and I said yes and gave them this ride.'' He also testified that it was while he was taking these other persons to their homes that the accident occurred. The names of the persons in the car besides Leslie Maringer, were Carmella Kapczak, Walker, Clyde Lanum, and a girl by the name of Irene, and there is evidence that no charge was made by the defendant, nor anything promised by the occupants of the car for the ride.

In the garnishment suit the defendant relies on and cites cases in support of its contention that the accident in question was not covered by the terms of the policy, more especially that ''None of the insured automobiles will be used to carry passengers for a consideration, actual or implied.''

The plaintiff's reply to the contention of the defendant is that nothing appears in the record to sustain the garnishee's statement that the policy provision relied upon as a defense was intended to eliminate all liability for injuries to pedestrians occurring when more than one person was riding in the car with the permission of the assured; that this use of the car was not in violation of the terms of the policy; that paragraph (6) of the

policy insures such persons in the same manner and under the same conditions as it insured the named assured, and declaration 9 (a) of the policy permits such purpose, and that in order to constitute a violation of the insurance policy the term "used" must mean an habitual use, something of a more permanent nature. In support of this contention plaintiff cites a number of cases, one of which is *Commercial Union Assur. Co. v. Hill,* 167 S. W. 1095 (writ of error denied). The Court of Civil Appeals of Texas said:

"The words 'that the automobile hereby insured during the term of this policy shall not be used for carrying passengers for compensation, etc., were intended to mean that the automobile should not be continuously used for that purpose for any length of time, or, in other words, the owner should not make a business of using said automobile for carrying passengers for hire, and it was evidently never contemplated that the casual use of it as made in this instance would work a forfeiture of the policy." The plaintiff also cites the case of *O'Donnell v. New Amsterdam Casualty Co.,* 50 R. I. 269, 146 Atl. 410, where the court said:

" 'Condition A' excepts from the insurance under the policy not automobiles while rented, but 'while being used for rental or livery purposes.' This exception is a prohibition of an habitual course of conducting the business of the assured, and does not prohibit a single and isolated transaction in an emergency such as the one under consideration." And further calls the court's attention to the case of *Crowell v. Maryland Motor Car Ins. Co.,* 169 N. C. 35, 85 S. E. 37 ; *Firemen's Ins. Co. v. Rye,* 160 Ark. 212, 254 S. W. 465.

In *Treolo v. Iroquois Auto Ins. Underwriters,* 348 Ill. 93, the insurance company defended an action on an automobile liability policy on the ground that at the time the accident occurred, the insured violated a term of the policy by using his automobile for the transpor-

tation of intoxicating liquor contrary to law. The court there said:

"The question here arises over what meaning shall attach to the word 'use' as applied to the automobile at the time of the accident. Webster's Dictionary defines the word 'use' as an act of employing or state of being employed; to convert to one's service; to employ. (Citing cases.) In the interpretation of the exclusion clause in this policy, 'is being used for transporting intoxicating liquor,' it is improper to consider the word 'transporting' alone. . . .

". . . The record contains no evidence even remotely tending to show that Treolo was then engaged in using his automobile for the transportation of liquor. To say that the single, isolated instance of carrying a jug of wine should defeat the rights of Treolo under his policy would be a strained and most unreasonable construction of the exclusion clause. Whether such transportation was a violation of the Prohibition act is not before us."

Then again in *Wold v. Glens Falls Indemnity Co.*, 269 Ill. App. 407, the insurance policy provided that the assured was protected in the operation of a truck in his business, and further provided that his business was hauling for a certain corporation only, namely, Protection Products Co. At the time of the accident, the insured was engaged in hauling certain property on his own account, in addition to property of said company. The insurance company, as garnishee, contended, among other things, that the policy issued to Wold, the insured, covered the motor truck only while it was being used and operated in the business of contract hauling for the Protection Products Co. The court in this case said:

"It may be said in passing that Wold was not engaged in the business of general hauling in the use of the truck. The record contains no evidence that tends

to show that Wold was using the automobile in general transportation business, and to say that a single isolated instance of carrying other goods than those of the Protection Products Co. would defeat the rights of Wold under his policy, would be a strained and unreasonable construction of the exclusion clause.''

On a like question the Supreme Court in the case of *Felsenthal Co. v. Northern Assur. Co.*, 284 Ill. 343, said:

''We have examined the instructions of the court carefully and find that they are all substantially correct. The court instructed the jury, in substance, that the provisions of the policy in question rendering it void if gasoline be kept, used or allowed on the premises is not violated by the mere bringing of gasoline on the property; that the words 'kept, used or allowed' mean that the prohibited article must not only be upon the premises but must be there for the keeping or storing of it; that there must be some degree of permanence in its continuance there.'' Again, in the case of *Szymkus v. Eureka Fire & Marine Ins. Co.*, 114 Ill. App. 401, the policy of insurance provided that it was void, ''if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the above described premises, benzine,'' etc. The trial court in that case instructed the jury as follows:

''The court instructs the jury that if they find from the evidence that before the time of the fire in question and during the term covered by the policy sued upon, there was kept, used, or allowed upon the premises described in the said policy any benzine, then the defendants are not liable, and your verdict must be for the defendants.''

This court held the instruction erroneous and reversed the judgment, which was in favor of the insurance company. The Appellate Court followed with

approval *Mears v. Humboldt Ins. Co.*, 92 Penn. St. 15,
which was quoted with approval in *Crowell v. Maryland Car Ins. Co.*, 169 N. C. 35. This court, referring
to the *Mears* case, said:

"In respect to the word 'use,' the court say: 'We
are not disposed to give the word "use" in this policy
the narrow construction claimed for it. It must have
a reasonable interpretation, such as was probably contemplated by the parties at the time the contract was
entered into. Nearly every policy of insurance issued
at the present time contains this condition, or a similar
one. What is intended to be prohibited is the habitual
use of such articles, not their exceptional use upon
some emergency.' We think the instruction erroneous." See also the case of *Weininger v. Metropolitan
Fire Ins. Co.*, 359 Ill. 584.

While the defendant has cited cases which seem to
take the contrary view to the cases we have cited, still
we think the better reasoning as to the term "used"
has been called to our attention by cases submitted by
the plaintiff. "Used" as it appears in declaration 11
of the policy according to the authorities above quoted
supporting this view, means a continued or business
use, and the facts in the case at bar do not indicate that
the Ford automobile was used for the carriage of passengers for hire, either express or implied, and the evidence does not support the defendant's theory that the
Maringer automobile was used on the night in question
for that purpose. There is no indication that the conveyance was held out or offered for use of the public
in the sense that the public might become passengers
for a consideration.

We quite agree with the defendant that the plaintiff
must recover if at all against the defendant insurance
company upon the ground that the action is one covered
by the terms of the insurance policy, and is an indebtedness due from the company to the Maringers. This

indebtedness became fixed and certain when the judgment was entered in the negligence action against the Maringers, and the plaintiff in the instant case was entitled to the judgment against the garnishee, defendant. It follows from the views herein expressed that the trial court did not err in entering judgment, and it is therefore affirmed.

*Judgment affirmed.*

DENIS E. SULLIVAN, P. J., and HALL, J., concur.