**GREAT AMERICAN INDEM. CO. OF NEW YORK**

v.

**SALTZMAN.**

No. 14992.

United States Court of Appeals, Eighth Circuit.

June 18, 1954.

E. L. McHaney, Jr., Little Rock, Ark., (Grover T. Owens, John M. Lofton, Jr., James M. McHaney and Owens, Ehrman & McHaney, Little Rock, Ark., on the brief), for appellant.

Thomas B. Tinnon, Mountain Home, Ark., for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

Appellee brought this action against appellant to recover on a policy of liability insurance. The parties will be referred to as they appeared in the trial court. Defendant issued to plaintiff a personal liability policy of insurance on the 13th day of June, 1950. The policy was delivered in the State of Arkansas and hence is an Arkansas contract. It was in full force and effect at all times pertinent to the issues here involved. It contained provision that the insurance company would, subject to exclusions, conditions and other terms of the policy, " * * * pay on behalf of the Insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law * * * for damages because of injury to or destruction of property, including the loss of use thereof." The policy contained exclusions which so far as here pertinent read as follows:

"This policy does not apply:

"(a) * * *

"(b) to the ownership, maintenance or use, including loading and unloading, of (1) motor vehicles * * *, (2) watercraft * * *, or (3) aircraft; * * *

"(c) * * *

"(d) * * *

"(e) * * * to injury to or destruction of property used by, rented to or in the care, custody or control of the insured;"

At the time of the issuance of the policy the insured was a practicing physician located at Mountain Home, Arkansas. He was also the owner of a private airplane and a duly licensed private pilot.

On November 28, 1951, plaintiff landed his aircraft at the Flippin airport located at Flippin, Arkansas. Shortly thereafter a Ryan Navion airplane owned by the Veterans of Foreign Wars was landed at the Flippin airport by its pilot. While this plane was standing at the airport, unoccupied and unguarded, the plaintiff, who had in mind purchasing a new plane, and being an airplane enthusiast, entered the cockpit of the unoccupied Ryan Navion plane for the purpose of inspecting its mechanism and its various gadgets. At the time he entered the plane the engines were not operating and he did not enter with the intention

of activating any of the machinery but simply for the purpose of inspecting it and familiarizing himself with the various instruments and controls. In the course of his inspection plaintiff engaged the aircraft starter knowing at the time it was the starter control and with the intention of engaging said control, but without the intention of starting the engines. Plaintiff was under the impression that the starter control could be engaged without actually starting the engines. This thought was based upon the mistaken belief that the mechanism connected with the starter was similar to that in his own craft. To his surprise and amazement and contrary to his expectations the engines started and plaintiff because of his unfamiliarity with the various gadgets was unable to set the brakes or turn off the engines or otherwise stop the movement of the aircraft which rapidly accelerated and crashed into a hangar after traveling a distance of some ninety feet resulting in substantial damage to the aircraft. Plaintiff's entrance to the aircraft was without the authority, knowledge or consent of the owner or operator of this aircraft, or so far as appears from the record the knowledge of anyone but himself.

In an action brought against plaintiff to recover damages to this aircraft resulting from his acts judgment was recovered against him in the amount of $3,569.58, including damages and costs. When that action was initiated the insured gave notice to the defendant herein of the commencement of the action and tendered to it the defense of the action which the defendant declined and plaintiff thereafter gave defendant notice of the entry of judgment and demanded that it pay the same. This, defendant also declined and thereafter plaintiff paid the judgment and brought this action against the defendant to recover the amount of said judgment and in addition his attorney's fee, costs and penalties recoverable under the Arkansas statutes.

The defendant answered, pleading as its defense that it was not liable because of the exclusions contained in the policy and that the damage for which plaintiff became liable and for which judgment was rendered against him was to an aircraft and that such liability was not one assumed by the defendant because of the exclusions contained in the policy.

The action was tried to the court without a jury. The facts were all stipulated and will be further developed in the course of this opinion. The court entered findings of fact in conformity with the stipulation and based thereon it concluded as a matter of law that the defendant was liable and entered judgment accordingly. D.C., 115 F.Supp. 944. From the judgment so entered defendant prosecutes this appeal, contending as it did in the trial court that:

I. The plaintiff's liability resulted from use of aircraft and is not an insured liability, and

II. The property damaged was property used by, rented to or in the care, custody or control of the insured.

As has been observed the facts were all stipulated and as stated by the defendant in its brief the ultimate issue is whether or not the policy covered plaintiff's liability for damage to an airplane.

The general insuring clause of the policy obligates the defendant "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law * * * for damages because of injury to or destruction of property * * *." Manifestly, if this provision stood alone and unqualified it would cover the loss here in question and hence the question to be determined is whether the exclusionary clauses relied upon exempt defendant from liability. The pertinent exclusions may be reduced to two:

1. Whether the aircraft was being used by plaintiff, and

2. Whether the aircraft was in plaintiff's care, custody or control.

In considering the question of liability under any insurance contract the contract must be considered as a whole. The decisive question in this case is not what abstract definition may be given the word "used" but rather what the term meant as used in the exclusionary provisions of the policy. We are clear that at the time of the occurrence which resulted in the damage to the Ryan Navion plane plaintiff was not using the aircraft nor was he attempting to use it. That was not his purpose in entering the cockpit of this craft but he was simply inspecting and somewhat carelessly handling certain gadgets connected with the mechanism. Had the owner or pilot in control of the craft been present it is not conceivable that the plaintiff would have requested of him the privilege of using the plane, but manifestly, his request would have been for the privilege of inspecting it. Defendant relies strongly on the case of Lee v. Aetna Cas. & Sur. Co., 2 Cir., 178 F.2d 750, but the case is readily distinguishable in its facts. There the representative of the owner of the building, or of the business carried on in the building, took a customer to the elevator so that it might be used in the normal, ordinary or customary manner for which it was intended, and invited the customer to enter for the purpose of use, whereas in the instant case there was no purpose on the part of the plaintiff to make the normal or customary use of the plane as an instrument of transportation. It is conceded by defendant, as it must be, that the term "use" is variously defined and if so, it was incumbent upon defendant as the insurer to so word the exclusionary clause of its contract that any conceivable contact with aircraft, such as a physical inspection of it, would come within that term as used in the contract. In Arkansas as in most jurisdictions it is held that as insurance contracts are phrased by the insurer it is incumbent upon the insurer to make them so clear that they contain no ambiguity as to their meaning or they must be construed most strongly against the insur-

er. Missouri State Life Ins. Co. v. Martin, 188 Ark. 907, 69 S.W.2d 1081; Kinard v. Mutual Ben. Health & Acc. Ass'n of Omaha, Neb., D.C.Ark., 108 F.Supp. 780.

The trial court gave very careful consideration to the question as to whether the acts of the plaintiff in inspecting the aircraft constituted "use" of the aircraft as the term is used in the exclusionary clause of the policy and in the course of its opinion the court said, inter alia:

"Various courts have discussed and defined the term 'use' and the following are examples of common definitions given to the said term:

" ' "In use" is defined to be "in employment;" "out of use" to be "not in employment;" "to make use of, to put to use" to be "to employ, to derive service from." ' Astor v. Merritt, 111 U.S. 202, 213, 4 S.Ct. 413, 419, 28 L.Ed. 401.

" 'Webster's New International Dictionary, 2d Ed., defines the word "use" as follows: "Act of employing anything." The New Century Dictionary defines it as follows: "To employ for some purpose, put into service, or make use of * * *; apply to one's own purpose." ' Samuels v. American Automobile Ins. Co., 10 Cir., 150 F.2d 221, 223, 160 A.L.R. 1191.

" 'In the instant case the terms in question are "use" and "using". Now a car would be used by a person, whether it was operated personally or through the services of another. If the insurer meant that liability should only attach when it was being operated or driven by the owner or some one with his consent, and it is claimed that the word "used" includes the term "operated"—then the insurer should have employed the word carrying in its meaning the narrower limitation of liability.

" 'The word "use" is defined as the "purpose served—a purpose, object or end for useful or advantageous nature." (Oxford English Dictionary.)

" 'This implies that the person receives a benefit from the employment of

the factor involved. It is this benefit, purpose, or end which defines the use. I use a chisel to chip out a piece of wood. The removal of the wood is the use to which I put the tool. * * * I employ an automobile for the purpose of transportation. I use it for the purpose of going from here to there.' Brown v. Kennedy, 141 Ohio St. 457, 48 N.E.2d 857 [Id., Ohio App.], 49 N.E.2d 417, 418. See also, American Automobile Ins. Co. v. Taylor, D.C.Ill., 52 F.Supp. 601.

" 'Webster's Dictionary defines the word "use" as an act of employing or state of being employed; to convert to one's service; to employ.' Treolo v. Iroquois Auto Ins. Underwriters, 348 Ill. 93, 180 N.E. 575, 576.

"Webster's New International Dictionary, Second Edition, defines the verb 'use' as follows: 'To convert to one's service; to avail oneself of; to employ; as, to *use* a plow, a chair, a book * * *. To put into operation; to cause to function; as, for his purposes he used the same machinery and the same skill he had previously used.'

"Of course if the term 'use' is construed to embrace all its possible meanings and ramifications, practically every activity of mankind would amount to a 'use' of something. However, the term must be considered with regard to the setting in which it is employed. In the instant case the policy excludes injury to property used by the insured and does not apply to the use, including loading and unloading, of aircraft. The Court is convinced that the term 'use' as employed in the exclusionary clauses was intended to mean and does mean the *ordinary* use or employment of the property or aircraft. As the Court said in Brown v. Kennedy, supra, 'I employ an automobile for the purpose of transportation. I use it for the purpose of going from here to there.' That is, the term 'use' in the exclusionary clauses means the employment, in the case of aircraft, of the property for the carrying of passengers or cargo, and is not broad enough to cover the inquisitive in-

spection of or meddling with an airplane by a person who is interested in purchasing a similar aircraft. This view is fortified by the fact that the aircraft exclusionary clause provides that the policy shall not apply to the use, 'including loading and unloading,' of aircraft. It is evident from this provision that the clause was intended to exclude the ordinary and natural use of aircraft for transportation purposes, and to extend the exclusion to the loading and unloading of the aircraft preparatory to and subsequent to the actual flight.

"Suppose a person were considering the purchase of a hoe for use in his garden, and, seeing a hoe in his neighbor's yard, he walked over, picked it up, and began inspecting it. It is doubtful if anyone would contend that, while he was inspecting the hoe, he was 'using' it, because when one thinks of the use of a hoe he thinks of the employment of the hoe for weeding a garden, chopping cotton, or one of the ordinary uses to which a hoe is put and utilized. By the same token, when one thinks of the 'use' of an airplane he thinks of the employment of the airplane for the transportation of passengers or cargo, i.e., its ordinary uses, and would not consider the inspection of an airplane by a prospective purchaser of such an airplane a 'use' of the said airplane." 115 F.Supp. 944, 950.

We conclude that the views of the trial court on this issue are well founded and we adopt them as our own.

It remains to consider the contention that the acts of the plaintiff in inspecting the aircraft placed him in the care, custody or control of the aircraft. Plaintiff was a trespasser and entered on this venture of inspecting the aircraft wholly without right or authority. The words "care, custody or control" as they are used in the exclusionary provisions of the policy connote a lawful, normal and customary situation. They do not, we think, contemplate that a mere trespasser inspecting the aircraft has either the care, custody or control of it.

The authorities cited by and relied upon by defendant are clearly not in point. In all of the cases cited by it there was a right to either the care, custody or control, while in the instant case the plaintiff was a mere trespasser without any shadow of right to do what he was doing. Thus in Hardware Mut. Cas. Co. v. Mason-Moore-Tracy, Inc., 2 Cir., 194 F.2d 173, and Crawford v. Kansas City Stock Yards Co., 228 Mo.App. 673, 73 S.W.2d 308, cited by defendant as supporting his contentions, the party whose acts were complained of had the right to possession at the time he acted. In Cohen & Powell, Inc., v. Great American Indem. Co., 127 Conn. 257, 16 A.2d 354, 355, 131 A.L.R. 1102, in the course of the opinion it is among other things said:

"While the word 'charge' has a very broad and varied meaning (McLoughlin v. Shaw, 95 Conn. 102, 107, 111 A. 62), a person or thing is not 'in charge of' an insured within the meaning of the policy unless he has the *right to exercise dominion or control over it.*" (Italics supplied.)

▉ It is argued that to permit plaintiff to recover under the circumstances here existing would in effect permit him to profit by his own wrong, but plaintiff is not profiting by his own wrong but is simply being indemnified against the result of his own wrongful acts and that, for the most part at least, is the very purpose of liability insurance. To commit an act of negligence is a wrongful act as against the person injured thereby but it is perfectly legitimate that one protect himself against the result of his own negligence by a contract of insurance. The acts of the plaintiff in this case were negligent acts and in that sense were wrongful but they were not, so far as disclosed, wilful, malicious, or criminal, and no public policy is involved in permitting one to insure against the results of such acts.

We conclude that the judgment appealed from is not vulnerable to the attacks made upon it by defendant and it is therefore affirmed.