# MONROE COUNTY MOTOR CO. et al. v. TENNESSEE ODIN INS. CO.—231 S. W. (2d) 386.

Eastern Section.   January 12, 1950.

Petition for Certiorari denied by Supreme Court, May 5, 1950.

224

Donaldson, Montgomery & Kennerly, both of Knoxville, for appellant.

Harry T. Burn of Sweetwater, for appellee.

ANDERSON, P. J. The bill was filed by the Monroe County Motor Company and Charles B. Randolph, Jr., against the Tennessee Odin Insurance Company as successor to the Tennessee Automobile Insurance Company and Odin Fire & Marine Company, on a policy of liability insurance, covering the Monroe County Motor Company, a corporation and its president, Randolph. The theory of

the bill is that by virtue of the terms of said policy the defendant insurer is liable for an unpaid balance on a joint judgment against the complainant Randolph and L. A. Wood Company, obtained by one Taylor in another suit as damages for personal injuries sustained by reason of the negligence of Randolph in the operation of an automobile belonging to said Company but being driven. at the time by Randolph. The chancellor in an able and discriminating opinion granted a recovery and the defendant appealed.

The recovery was in the name of the complainant Randolph. The chancellor held there was no theory of the evidence under which the Monroe County Motor Company was entitled to relief and there is no complaint about that ruling. Hence, without determining it, we need not concern ourselves with that question.

The defendant makes two contentions: (1) that by reason of certain sworn testimony given in the trial of the damage suit, and a stipulation in that case, the complainant Randolph is estopped to set up certain facts essential to a recovery in the present case and (2) that in the particular circumstances the policy sued on did not cover the liability of Randolph.

The Monroe County Motor Company, a corporation, conducts an automobile sales agency and repair shop in Sweetwater, Tennessee. The policy sued on is designated, "a garage liability policy". It names the Monroe County Motor Company as insured and by a separate provision the individual liability on the part of its executives is also covered.

The pertinent insuring agreement is as follows: *"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability*

*imposed upon him by law for damages,* including damages for care and loss of services, *because of bodily injury,* including death at any time *resulting* therefrom, sustained by any person or persons, caused *by accident and arising out of such of the operations hereinafter defined* as are indicated by specific premium charge or charges in Item 3 of the declarations.''

The definition of ''operations'' pertinent to the facts of the present case, is as follows: ''The ownership, maintenance, occupation or use of the premises herein designated, including the public ways immediately adjoining, for the purpose of an automobile dealer or repair shop, and *all operations* either on the premises or elsewhere *which are necessary and incidental thereto,* including repairs of automobiles or their parts, and ordinary repairs, of buildings on the premises and the mechanical equipment thereof; *and* the ownership, maintenance, or *use of any automobile for any purpose in connection with the above defined* operations, and also for pleasure use.''

The coverage is extended by the following definition of the term, ''insured'': *''The unqualified word 'insured' includes* not only the named insured but also any partner thereof if the named insured is a partnership, and the president, vice president, secretary and treasurer of the corporation if the named insured is a corporation, *with respect to the operation, for business or pleasure, of any automobile owned by or in charge of the named insured,* except an automobile owned by such partner or officer or by a member of his family; but this provision shall apply only with respect to any such partner or officer who earns remuneration which is included in the total remuneration upon which premium for this policy is based, as hereinafter provided.''

There is a further provision that "This policy applies only to accidents which occur during the policy period within the United States and North America (exclusive of Alaska or the Dominion of Canada."

The italicized clauses are those applicable to the facts of the present case.

At the time here material, the complainant Randolph was president of the Monroe County Motor Company. He was employed at a specified salary and on a full time basis. He lives in Sweetwater, Tennessee, where the principal office of the corporation is located. L. A. Wood Company is also a corporation with an office in Sweetwater. It is engaged in barytes mining with a number of mines in the State of Georgia, one of them being at Cartersville. L. A. Wood is the president and principal stockholder of the Company.

At the particular time, due to wartime restrictions affecting the manufacture and sale of automobiles, the principal business of the Monroe County Motor Company consisted of selling parts and accessories. The L. A. Wood Company was its best customer. It had a good trade with that company's mines in the State of Georgia. In January 1944 Mr. Wood found it necessary to make a trip to the company's mine at Cartersville, Georgia. He decided to go by automobile. Due to an injury theretofore received he was unable to drive an automobile for a long distance without his leg becoming excessively tired and paining him. Accordingly he invited Mr. Randolph to make the trip with him and do part of the driving. Randolph accepted and they left Sweetwater about 9 o'clock in the morning, in a Lincoln automobile belonging to the L. A. Wood Company. They were en route to Cartersville, Georgia. As they left Sweet-

water, Mr. Wood was driving. He surrendered the wheel to Mr. Randolph as they neared Dalton, Georgia. They had gone but a short distance when they overtook a man on a bicycle going in the same direction. The car then being operated by Randolph struck the bicycle and the rider, whose name was Taylor, was injured.

As a result Taylor brought suit against L. A. Wood Company, L. A. Wood, individually and Randolph, but as said, the judgment was against Randolph and the L. A. Wood Company only. L. A. Wood, individually, was exonerated as a result of the following instruction given by the judge to the jury:

"It has been stipulated, however, between the parties, that the Cadillac automobile in question was the property of L. A. Wood and Company, and that neither of the other defendants had any interest therein, and further, that the automobile was at the time of the collision engaged exclusively in the business of said L. A. Wood and Company.

"This being true, and there being no evidence as conceded by plaintiff, which would sustain a verdict against the defendant, L. A. Wood, individually, you are directed to bring in a verdict in favor of L. A. Wood."

The defendant insurer in the present case was also the insurer in another policy covering the liability of L. A. Wood Company as established in the damage suit to the extent of $5,000.00. This amount the defendant paid, leaving a balance due Taylor on his judgment of $3,500.00. It is to recover this balance that the present suit is brought under the theory, as stated, that the liability of Randolph was within the coverage of the policy sued on.

The complainant contends that since in driving the car he was on the business of the Monroe County Motor

Company and acting within the scope of his authority as president of that concern, his custody and control of the vehicle was necessarily that of the named insured, and therefore he was "in charge of" the car within the meaning of the pertinent policy provision. The defendant contends that all other questions aside, the complainant is estopped to say that he was on a business mission for the Monroe County Motor Company.

This contention is based upon two facts. The first is that the complainant did not object to the above mentioned stipulation made at the trial of the damage suit to the effect that at the time of the accident the automobile was engaged exclusively in the business of L. A. Wood Company. The second is that in that case the complainant testified that he went along on the trip as a matter of courtesy to Mr. Wood, whereas in the present case he testified that he made the trip in the interest of the Monroe County Motor Company.

■■ In no view of the matter could the first ground give rise to a judicial estoppel in the correct sense of that term. As to it, the defendant's contention is manifestly based upon the rule that a litigant may not assume inconsistent positions. This rule is not one of estoppel, strictly speaking, but is a rule of positive procedure necessary to the orderly dispatch of litigation, whereas the distinctive feature of the judicial estoppel as applied in this jurisdiction is the express purpose of the court to uphold the sanctity of oath as a matter of public policy. Sartain v. Dixie Coal & Iron Co., 150 Tenn. 633, 653, 266 S. W. 313.

The circumstances under which the stipulation exonerating Wood was entered into are unusual. As already said, the defendant insurer was also obligated under

another policy insuring L. A. Wood Company (and apparently by extended coverage, L. A. Wood, individually), and covering the liability arising out of an accident such as that under consideration in the damage suit. The defense of the three defendants in that case, namely L. A. Wood Company, L. A. Wood individually, and the present complainant Randolph, was conducted by the defendant insurer through three attorneys employed by it. This arrangement was presumably pursuant to the usual provision of an automobile liability policy. It should be said in passing that able counsel representing the insurer in the present suit was not one of the attorneys appearing in the damage suit. He had no connection with that litigation. However, one of the attorneys conducting the defense in that case was the insurer's general counsel.

The damage suit was first filed in a state court in Georgia. Over the protest of Wood, the attorneys representing the insurer caused it to be removed to the United States District Court. There were two trials in that court. A verdict in favor of L. A. Wood individually was directed on the first trial. Following this the case went to the jury against the remaining two defendants, L. A. Wood Company, and Randolph. The jury reported a verdict in favor of Randolph and one against the L. A. Wood Company, assessing the damages at $22,500.00. A motion for a new trial was filed by the plaintiff, challenging the verdict exonerating Randolph. The defendant L. A. Wood Company also filed a motion for a new trial, challenging the verdict against that Company. Both motions were granted on the ground that there was a fatal repugnancy in the verdict against the Company and the verdict in favor of Randolph. The

case was thereupon tried again as to the L. A. Wood Company and Randolph, resulting, as said, in a verdict in favor of the plaintiff against these two defendants jointly, for the sum of $8,500.00.

The complainant Randolph from the beginning maintained that any liability on his part was covered by the policy sued on. Following the accident he immediately reported it to the insurer's agent in Sweetwater, giving him all the facts. The agent told him that he had "nothing to worry about, that (he) was fully protected."

Furthermore, when one of the attorneys furnished by the insurer was preparing the Taylor case for trial, the complainant Randolph told him that his liability was covered by the policy in suit, and later the other attorneys representing the insurer were also fully advised about the existence of this policy and Randolph's claim that with respect to the particular accident he was protected by it. An adjuster for the insurer who was present assisting in the defense of the damage suit was likewise so informed. Also pertinent in this connection is the fact that Randolph was told by one or more of the attorneys furnished by the insurer that the existence of the policy covering him should not be mentioned in the course of the trial.

In testifying in the present case Randolph freely admits that he heard the judge instruct the jury to return a verdict in favor of Wood individually and that he made no objection thereto. He says that this instruction followed a conference at the bench between the judge and the attorneys for the plaintiff and those ostensibly representing the defendants, but in reality representing the insurer; that he made no objection to the judge's instruction because he thought the lawyers

knew what they were doing. The complainant's testimony is corroborated by that of Wood. There is no evidence to the contrary.

██ It requires no discussion to demonstrate that under the circumstances stated, the stipulation in the damage suit furnishes no basis for the application of the rule which forbids that a litigant should occupy inconsistent positions. The stipulated fact that the automobile was being operated on the business of L. A. Wood Company was not the position of the complainant Randolph and certainly he derived no advantage from it. It was the position of the defendant insurer acting through the attorneys furnished by it to conduct the defense of the damage suit. Cf. D. S. Etheridge Co. v. Peterson, 19 Tenn. App. 530, 532, 90 S. W. (2d) 957. While ostensibly representing the defendants in that suit, including Randolph, they were in reality representing the insurer and in making the stipulation the only reasonable inference is that they had in mind a contest by the insurer of Randolph's claim that he was protected by the policy involved in the present suit under which the same insurer was obligated.

So far as is perceived, the facts stipulated served no interest of the insurer in so far as was concerned the policy covering the liability of L. A. Wood Company. Upon the contrary, they fastened liability on that company for the negligent operation of the automobile by Randolph.

██ Moreover, if upon any theory the failure of Randolph to object to this stipulation could be regarded as an adoption of it (which we do not hold), and hence as a position taken by him, then it must be said that it was one which he was induced to take by the present defen-

dant acting through its attorneys. Hence it is not available to the latter as a bar to Randolph's contention in the present case. Cf. Stamper v. Venable, 117 Tenn. 557, 97 S. W. 812.

The other ground on which it is sought to raise an estoppel is, as stated, that Randolph testified in the trial of the damage suit that he made the trip in question as a courtesy to Wood and said nothing about being on the business of the named insured, Monroe County Motor Company and hence cannot be heard to say the contrary in the present suit.

■ The doctrine of judicial estoppel or estoppel by oath, as it has been referred to, is well established in this state. A generally approved statement appears in Tate v. Tate, 126 Tenn. 169, 212, 148 S. W. 1042, 1053 in the following language: "The law upon this subject, as exhibited in our cases, is to the effect that where one states on oath, in a former litigation, either in a pleading, or in a deposition, or in oral testimony, a given fact as true, he will not be permitted to deny that fact in a subsequent litigation, although the parties may not be the same."

The case of Sartain v. Dixie Coal & Iron Co., 150 Tenn. 633, 266 S. W. 313, is virtually a treatise on the subject; but what is there said, as well as what is said in prior decisions, must be considered in the light of subsequent cases dealing with the doctrine.

■ In Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897, 906, wherein the Supreme Court adopts as its own the able opinion prepared for this court by Judge Felts, Presiding Judge of the Middle Section, when that case was before us, it is said: "While judicial estoppel applies where there is no explanation of the

previous contradictory sworn statement (Sartain v. Dixie Coal & Iron Co., 160 Tenn. 633, 650, 651, 266 S. W. 313), it does not apply where there is an explanation showing such statement was inadvertent, inconsiderate, mistaken, or anything short of a 'wilfully false' statement of fact. Black Diamond Collieries v. Deal, 150 Tenn. 474, 477, 265 S. W. 985; Helfer v. (Mutual Ben.) Health & Acc. Ass'n, 170 Tenn. 630, 637, 638, 96 S. W. (2d) 1103, 1105, 113 A. L. R. 921, 924, 925.''

Tested by these principles there is present no such inconsistency between Randolph's testimony in the damage suit, and his testimony in the present suit as is contemplated by the doctrine of judicial estoppel. In the first place, Randolph does not deny in the present suit any fact to which he testified in the damage suit. His testimony to the effect that in making the trip it was his purpose to service the Georgia accounts of the insured does not exclude the idea that he was at the same time accommodating the president and largest stockholder of the insured's biggest customer.

Moreover, Randolph's explanation of his testimony in the damage suit is wholly reasonable and would serve to prevent a judicial estoppel against him if that doctrine were otherwise available to the defendant. As already said, he claimed from the very beginning that he was protected by the policy. He revealed to the attorney who was investigating the accident for the insurer and preparing the damage suit for trial, his purpose in making the trip. He told him in substance and effect what he testified upon the present trial, namely, that Wood asked him to go along and assist in the driving; that L. A. Wood Company was a good customer of the Monroe County Motor Company; that the lat-

ter company sold parts and accessories to the mines in the State of Georgia owned or operated by the L. A. Wood Company; and that he "was very happy to go along on the trip to Georgia" so that he could talk with him (Wood) and could check and see what he could sell him while he was down there. There is no doubt about these facts. The attorney to whom this information was given and who participated in the conduct of the defense of the damage suit, so testified in the present case.

It is apparent therefore that prior to the first trial of the damage suit the attorneys ostensibly representing the defendants in that suit, including Randolph, but in reality representing the insurer, were advised of the fact that Randolph did not make the trip for his own pleasure or solely as a courtesy to Mr. Wood, but with a view of furthering the interests of his Company, the Monroe County Motor Co. They did not see fit to bring this fact out and the reason they did not do so seems to us obvious, too obvious to mention.

■ It follows that there is no basis in this case for the application of the doctrine of judicial estoppel at the instance of the defendant. That doctrine founded on contradictory statements under oath is well settled in this State and will be unhesitatingly applied in a proper case, but as we have heretofore had occasion to note, we are not disposed to extend it. It can never find application unless there has been what is equivalent to a specific and categorical denial of that which has been affirmed, unaccompanied by any reasonable explanation of the discrepancy, and unless it appear that the previous statement was not only untrue but was wilfully false in the sense of conscious and deliberate perjury. Davis v. Mitchell, 27 Tenn. App. 182, 202, 178 S. W. (2d) 889.

It remains to be determined whether in the circumstances disclosed by the record, the liability of Randolph individually is covered by the policy. This depends upon whether it can be said that at the time of the accident the automobile was ''in charge of'' the named insured, Monroe County Motor Company, within the meaning of that phrase as used in the policy. The defendant contends that this could not have been so unless in the operation of the car at the time of the accident Randolph was on the business of the insured and that the evidence does not support this view of the matter. It is further contended that it cannot be said that Randolph was in charge of the car because the president of the corporation which owned it was an occupant thereof. at the time and had the right of dominion over and control of the driver.

As already said the L. A. Wood Company was the largest customer the insured had. The several mines it owned in the State of Georgia purchased from the insured each year some $6,000.00 to $9,000.00 worth of accessories. Randolph periodically visited these accounts in Georgia for the purpose of ascertaining their needs and supplying them. Dut to a shortage of help and the wartime restrictions on travel, he had not been able to call on his Georgia customers for some time. One of these was a mining concern owned by the L. A. Wood Company and located at Cartersville, Georgia. Hence, when Wood told Randolph of his proposed journey to Cartersville and invited Randolph to go along and assist in the driving of the automobile, the latter was glad to take advantage of the invitation to accompany Wood as it would give him an opportunity to make his delayed call upon the insured's customer in Cartersville

and at the same time cultivate the good will of Mr. Wood. After the accident Randolph did proceed to that place and obtain from the mining concern there an order for the purchase of a quantity of automobile accessories.

There can be no doubt that Randolph was glad to accommodate the president and largest stockholder of his Company's biggest customer, thus promoting and reinforcing the good will of that company, and in so doing, apart from other considerations, he was furthering the interests of the Monroe County Motor Company. See Wilhoit v. Iverson Tool Co., Tex. Civ. App., 119 S. W. (2d) 709.

It is equally certain that, if in accepting Wood's invitation Randolph contemplated he would render some service to L. A. Wood Company by assisting Wood in the driving of the car, in reaching the decision, Randolph had in mind primarily the fact that he would have an opportunity to transact some business on behalf of the Monroe County Motor Company with its customer in Cartersville, Georgia, and that had it not been for this fact and the opportunity afforded him to curry favor with the president and largest stockholder of L. A. Wood Company, he would not have made the trip.

The evidence in this respect is convincing. Before Randolph could leave his business, it was necessary for him to secure the services of some one to work in the garage during his absence. The invitation was accepted on this condition which was fulfilled. Considering the scarcity of help due to conditions brought about by the war, it would be unreasonable to conclude that Randolph would leave his business under these circumstances merely for the pleasure of the trip, as the defendant contends was the case.

240

■ Hence, the conclusion is inescapable that in making the journey and taking his turn at the task of driving the car Randolph was acting within the scope of his authority as president of the corporation and his acts were the acts of the corporation itself.

But for reasons presently to be stated, the defendant contends that even so, under the facts of this case, it cannot be properly regarded that the automobile "was in charge of" the Monroe County Motor Company within the meaning of the policy provision.

■ It will be observed that the provision for extended coverage is to the effect that the word "insured" includes the designated officials of the corporation only where that word is unqualified. The coverage of the individual liability of the respective officials is confined to the operation of an automobile "owned by or in charge of the *named insured.*" Obviously, the word "insured" in this clause is qualified by the word "named" immediately preceding it. The only insured designated by the name in the policy is the Monroe County Motor Company. The individuals are covered by a reference to their respective official titles. Therefore, we think it is essential under the facts of the present case that it be shown that at the time of the accident the automobile was "in charge of" the Monroe County Motor Company.

The defendant contends that the case of Coffey v. Gayton, 136 Me. 141, 4 A. 2d 97, is direct authority for the view that the automobile cannot be properly held to have been in the charge of the insured at the time of the accident. That was a suit on a policy having provisions somewhat but not entirely similar to the one before us and required a determination of whether the automobile in question was in charge of the named insured. The

decision holding the insurer not liable turned upon the fact that at the time of the accident the official of the named insured who was driving the car of another was not on any business of the insured, but was using it *solely* and *exclusively* for the accommodation of the owner of the car who had no connection, business or otherwise, with the named insured.

It was accordingly held that the car was not in charge of the insured within the meaning of the policy. The case is not in point. The distinguishing factor is that here the car was not being operated solely and exclusively for the owner, but upon the contrary, the person in actual charge of its movements was the president of the named insured, who acting within the scope of his authority, was using the car in furtherance of the insured's business and, but for the fact that he was promoting the business of the insured, he would not have been operating the car at all. The fact that another, i. e., L. A. Wood Company, may have been deriving a benefit from the operation of the car does not preclude this view, even when the controlling principle is exclusively that of respondeat superior. See Re-Statement of the Law of Agency. Sec. 226; 42 C. J. 1107, 60 C. J. 1107, 60 C. J. S., Motor Vehicles, Section 437, p. 1101; 5 Am. Jur. 718.

Cunningham v. Union Chevrolet Co., 177 Tenn. 214, 147 S. W. (2d) 746, 148 S. W. (2d) 633, cited by the defendant, supports, in principle, the contention of the complainant.

Here, insofar as Randolph was concerned, the primary purpose of the trip was to serve the Monroe County Motor Company. Any benefit derived by L. A. Wood Company from his activities was purely incidental to the primary purpose.

But it is insisted that nevertheless, under the facts of the present case it cannot be considered that the automobile was in charge of the insured because the president of the corporation which owned the car was an occupant thereof at the time of the accident, with the right to direct and control the operation of the machine. To support this view we are referred to the case of Angel v. McLean, 173 Tenn. 191, 116 S. W. (2d) 1005. In that case and the line of cases of which it is typical, the courts are dealing with the circumstances under which the negligence of the immediate actor, i. e., the one actually operating the vehicle, may be imputed to another. The decisions in the main turn upon whether the latter has the right of control, expressed or implied, of the operator. In such a case, both parties may be liable. The liability of the driver rests upon the common law duty to use that which he controls so as not to injure another. The vicarious liability of the other occupant rests upon the principle of respondeat superior, which contemplates dominion, not over the machine, but over the one in actual charge of its operation. Davis v. Auto T. & V. Co., 141 Tenn. 527, 213 S. W. 914; Phillips-Buttorff Mfg. Co. v. McAlexander, 15 Tenn. App. 618.

The defendant's contention upon this phase of the case necessarily proceeds upon the theory that, though in the general employ of the insured, Randolph was a servant of the owner of the car with respect to its operation at the time of the accident. This is what is known as "the loaned servant" doctrine. It is a special application of the principle of respondeat superior and presupposes that the general employer has for the time being surrendered to the temporary employer his right to control the servant.

But we do not think the question of who was in charge of the automobile at the time of the accident is to be determined upon the principles of respondeat superior. The meaning of the phrase, "in charge of", as used in the policy, cannot be given so narrow a construction. To do so would be to say that the provision of the policy covering the individual liability of the officials is confined to cases rising out of an accident wherein the negligence of the official in charge of driving the car was imputable to the named insured, i. e., the Monroe County Motor Company.

This is not the case, for, as has been seen, the provision in question covers the individual liability of the respective officials rising out of the use of an automobile for pleasure, and since the named insured is a corporation, this could only mean the personal pleasure of the the officials. But apart from this, giving the particular language the interpretation most favorable to the complainant, which we are required to do where it is reasonably susceptible of two meanings, we think one rightfully in actual physical control of the machine at the time of the accident is "in charge of" it within the meaning of the policy provision. The language of an insurance policy, as is true in the case of other contracts, is to be given the natural and ordinary meaning commonly ascribed to it in everyday use unless by some known usage the terms employed have acquired a meaning different from their popular sense. Travelers Ins. Co. v. Ansley, 22 Tenn. App. 456, 464, 124 S. W. (2d) 37, and cases cited. We apprehend that the average person would be astonished to learn that one actually driving an automobile and individually liable for a failure to manage it properly was not to be considered as being in charge of the vehicle.

The words "charge" and "custody" are frequently used as synonyms. The lexicographers give them as such. State v. Clark, 86 Me. 194, 29 A. 984; In re Boulware's Will, 144 Miss. 235, 258 N. Y. S. 522.

Custody of a thing means to have it in charge. The term implies temporary physical control merely and does not constitute dominion of supremacy of authority as does possession in its full significance. Gibson v. St. Paul F. & M. Ins. Co., 117 W. Va. 156, 184 S. E. 562, and cases cited.

In Moffett v. Pa. etc. Ins. Co., 137 Pa. Super. 569, 10 A. (2d) 579, 581, it is said that the meaning of "in charge of" as defined in Words and Phrases, 4th Series, Vol. 2, page 284 (6 Words and Phrases, Perm. Ed., page 563), is, "in the care or custody of, or entrusted to the management or direction of", citing Houston Oil & Transport Co. v. Aetna Ins. Co., D. C., 36 F. (2d) 69, 71; see also, Sky v. Keystone Mutual Cas. Co., 150 Pa. Super. 613, 29 A. (2d) 230; Guidici v. Pa. Auto Ins. Co., Cal. App., 179 P. (2d) 337. Thus it is held that where the owner of goods places them in the keeping of a servant either by delivery or permission, the "possession" remains in the owner and the servant has the mere custody. Henley v. State, 59 Ga. App. 595, 2 S. E. (2d) 139.

While the insurer was held not liable in Coffey v. Gayton, supra, relied upon by the defendant, the reasoning of the court clearly implies that had it appeared that at the time of the accident the car was being operated by the servant of the insured acting within the scope of his authority and in furtherance of the business of the insured, the result would have been different, notwithstanding that the owner of the car was an occupant thereof at the time of the accident and notwithstanding that

it was at her request that the car was being driven by one in the general employ of the insured. In other words, it is implied, we think, that the presence at the time of the accident of the owner of the car and the fact that she was deriving a benefit from its operation by one in the insured's general employ did not preclude the view that the car was "in charge of" the insured where it appeared that its servant was in actual charge of the car's operation.

In support of its contention that the right to control the operation of the car is determinative, the defendant refers us to the case of Cohen & Powell v. Great American Ind. Co., 127 Conn. 257, 16 A. (2d) 354, 355, 131 A. L. R. 1102. There the court had under consideration the provision of a policy excluding from its coverage liability for damages to property "in charge of" the insured. The insured operated a motor freight transport business from a garage. He sublet an allotted space in the garage to the plaintiff for the storage of a truck. The space was reserved for the exclusive use of the plaintiff who had keys to the outer doors of the insured's garage. The truck was stored in the leased space nightly and its van, cab and ignition were locked. It was held that the truck was not "in charge of" the insured within the meaning of the policy because the insured did not have physical control of it. Said the court: "The insured had no right or duty to repair, service, use, drive or exercise any dominion or control over the plaintiff's truck." These facts clearly distinguish that case from this one.

It is true that there the Court said: "While the word 'charge' had a very broad and varied meaning, (McLoughlin v. Shaw, 95 Conn. 102, 107, 111 A. 62), a person

or thing is not 'in charge of' an insured within the meaning of the policy unless he has the right to exercise dominion or control over it''. But this observation must be considered in the light of the facts with which the court was dealing. When so considered, it is obvious that what was meant was the right to actual physical control of the vehicle. Hence, if anything, the case supports the contention of the complainant rather than that of the defendant.

▮ Giving to the phrase in question the interpretation most favorable to the complainant and having due regard to the commonly understood meaning of it, we think it must be held that at the time of the accident the complainant was "in charge of" the automobile within the meaning of the policy provision, and since he was at the time acting within the scope of his authority as president of the corporation which was the named insured in the policy, his control or custody of the vehicle must be regarded as that of the corporation. We need not determine whether there are other circumstances under which the named insured could properly be regarded as having been in charge of an automobile at the time of an accident giving rise to liability on the part of one of the covered officials. Our decision is confined to the facts of the present case.

The result is that the decree of the chancellor is affirmed at the cost of the defendant.

Baptist and Swepston, JJ., concur.