IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 19, 2002 Session

## HAL GERBER v. VIRGINIA STARR SEGAL

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-00-0893-2    Floyd Peete, Jr., Chancellor**

_____

**No. W2001-01709-COA-R3-CV - February 11, 2003**

_____

This case addresses a fee dispute between an attorney and his client. The trial court granted the attorney summary judgment as to the reasonableness of his fee. We reverse the grant of summary judgment, and likewise the final judgment, as both were the direct result of an erroneous application of the doctrine of judicial estoppel.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., joined, and ALAN E. HIGHERS, J., dissents.

Ed M. Hurley, Memphis, Tennessee, for the appellant, Virginia Starr Segal.

James D. Wilson, Memphis, Tennessee, for the appellee, Hal Gerber.

**OPINION**

Appellee represented Appellant in a divorce action which began in January, 1996, and ended in June, 1999.[1] Appellee claims that, at the time of the final decree of divorce, Appellant owed in excess of $50,000 for attorney's fees and $7,500 for accounting fees.[2] As part of the divorce decree, the Appellant's ex-husband was ordered to pay $15,000 of Appellant's attorney's fees. Appellee contends that Appellant made a payment towards her unpaid fees in January, 2000 but failed to make any further payments. This resulted in Appellee filing a complaint to

_____

[1]The record is devoid of any written agreement between the parties. In her answer to Appellee's initial complaint, Appellant averred "that she did not have a written contract of representation with the [Appellee] nor did she agree to an hourly rate of $250.00 but believed that the [Appellee] would be reasonable in providing legal services."

[2]The special master in the underlying divorce case found the value of the marital property to be $231,549.00, of which Wife, Appellant in this case, was awarded $115,775.00.

collect the unpaid portion of his fees in May, 2000. At that time, with consent of both parties, the Appellant's ex-husband paid the $15,000 he had been ordered to pay to the Clerk of Court. At the time of the filing of the Appellee's brief, these funds remained in the custody of the Chancery Court Clerk and Master.

Appellee filed a motion for partial summary judgment on the question of whether his fees, services and related expenses were fair, reasonable and in line with services performed by other attorneys, for release of the deposited funds, and for a reference to a Master for determination of the exact amount of the outstanding debt.

After a hearing, the trial court granted the Appellee's motion for partial summary judgment and determined that Appellant was judicially estopped from asserting that she owed anything less than $54,647.57 for attorney's fees and $7,500 in accounting fees at the time of her divorce. This determination apparently rested upon testimony Appellant gave before the special master in the underlying divorce proceedings concerning her attorney's fees.

As requested, the chancellor referred the matter to a special master for determination of what, if any, credits Appellant was entitled to apply to this debt. After hearing testimony from the parties the special master determined that Appellant was entitled to a credit of $22,138.25 which left an unpaid balance of $31,137.00 for attorney's fees plus the $7,500 in accounting costs. The chancellor adopted the Master's findings in a final decree dated June 18, 2001, wherein he modified the Master's report by reducing the sum owed for attorney's fees to $30,998.75. This appeal followed.

Appellant presents the following two issues for review:

(1) Was it error for the Court to enter Summary Judgment when there were genuine issues of material fact to be decided at trial?

(2) Were Plaintiff's charges unreasonable and excessive?

### *Standard of Review*

"Summary judgment is rendered in favor of a party upon a showing 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991) (citing former Tenn. R. Civ. P. 56.03, now Rule 56.04). Such a decision involves only questions of law and, therefore, no presumption of correctness attaches to a decision granting summary judgment. *Id.* On appeal, therefore, "we must make a fresh determination concerning whether or not the requirements of Tenn. R. Civ. P. 56 have been met." *Id.* In making such determination, we must consider the evidentiary materials and pleadings in a light most favorable to the opponent of the motion, and draw all reasonable inferences in that party's favor. *Id.*

## *Action of Trial Court*

In Appellee's motion for partial summary judgment he moved the court "to grant him a partial summary judgment finding that his legal fees for his services and related expenses, rendered on behalf of the defendant are fair, reasonable, and in line with similar services performed by other competent attorneys practicing in this area. . . ."[3] Appellee, in support of his motion, averred that "the defendant filed sworn statements of income and expenses in this Court in her divorce case that included her debt for legal fees and expenses, and confirmed the outstanding balance. The doctrine of Judicial Estoppel prevents the defendant from now swearing to, or attempting to prove, the contrary."[4] The trial court, in an order dated January 5, 2001, granted Appellee's motion and stated that "the [Appellant] is judicially estopped from asserting that she owes anything less than $54,647.57 in attorney fees and $7,500.00 in accounting fees. . . ." The reasonableness of the Appellee's fees was not mentioned in this order, which also referred the matter to another special master for a determination of what credits, if any, Appellant would be allowed to apply to this figure.

The second special master, constrained by the ruling of the trial court as to what fee Appellee was owed, issued a final report which was adopted by the trial court. In an order dated June 18, 2001, the trail court adopted, with modifications, the report of the special master and held that Appellant owed Appellee $30,998.75 in attorney fees and $7,500.00 in accounting fees. The court went on to state that "said attorney fees have heretofore been found to be fair and reasonable. . . [,]" in an apparent reference to the findings of the special master in the underlying divorce action, such findings having been incorporated into the final order in that case.

It is obvious that the finding of the special master in the underlying case, as to the reasonableness of the Appellee's fees, was based on the belief that the parties had reached an agreement as to the fees to be charged. Appellant now avers that there was no such agreement. Accordingly, the controlling issue in the present case is what, if any, agreement the parties had reached concerning the fees to be charged. Only after a determination of this question can the

---

[3] This request was apparently made in response to Appellant's answer to Appellee's complaint in which she states that "she did not agree to an hourly rate of $250.00 and that such rate is excessive[,]" that "she has paid the [Appellee] a considerable sum of money and avers that the [Appellee] has been paid for services performed and that she is not further indebted to the [Appellee] in any amount and any charges over and above the amount already paid is [sic] unreasonable, excessive and without justification."

[4] Appellant filed a motion in response to Appellee's motion for summary judgment in which she "avers that the document described was prepared by her attorney; that the figure of attorney fees was inserted by her attorney and that she was not privileged to this information. Further, that she was called to her attorney's office and asked to sign page 3 of the Affidavit and was not shown either page 1 or page 2." Appellant contemporaneously filed an affidavit supporting these contentions, stating further that "while in front of the Divorce Referee and Arbitrator I was never questioned about the Affidavit;[] while testifying, I was never provided with the original or a copy of the Affidavit;[] I never gave testimony relative to the 1999 Affidavit and [] prior to this Action, I have never been provided with a copy of the 1999 Affidavit filed herein this Cause as an Exhibit."

reasonableness of the fees properly be addressed. The issue thus turns to whether the court correctly applied the doctrine of judicial estoppel in its determination of the proper fee in this case. If the trial court was correct in finding that the Appellant was estopped from denying that she owed less than Appellee claimed, and that amount was already found to be reasonable in the underlying case, then the trial court committed no error. However, if the trial court incorrectly found that the Appellant was estopped from denying that she owed an amount differing from that claimed by Appellee, then the trial court erred in granting partial summary judgment and referring the matter to a special master, thereby constraining his findings based on this erroneous holding. Accordingly, we must begin by deciding whether the trial court's conclusion that the facts of this case warranted application of the doctrine of judicial estoppel was proper.

### *Judicial Estoppel*

Strictly speaking, judicial estoppel is not a true estoppel, but rather a "rule of positive procedure necessary to the orderly dispatch of litigation . . . the express purpose of [which is] to uphold the sanctity of oath as a matter of public policy." ***Monroe County Motor Co. v. Tenn. Odin Ins. Co.***, 231 S.W.2d 386, 390 (Tenn. Ct. App. 1950). "It has been termed a ***quasi*** estoppel which estops a party from playing fast and loose with the courts by contradicting a previous position or previous testimony during a course of litigation or during a subsequent action." ***Woods v. Woods***, 638 S.W.2d 403, 406 (Tenn. Ct. App. 1982). Appellee insists the doctrine is relevant here and was properly applied by the trial court in considering its grant of summary judgment.[5] However, the doctrine of judicial estoppel "can never find application . . . unless it appear[s] that the previous statement was not only untrue but was wilfully false in the sense of conscious and deliberate perjury." ***Monroe County Motor Co.***, 231 S.W.2d at 393. Accordingly, the doctrine does not apply where there has been an explanation showing that the previous allegedly contradictory "statement was inadvertent, inconsiderate, mistaken, or anything short of a 'wilfully false' statement of fact." ***D.M. Rose & Co. v. Snyder***, 206 S.W.2d 897, 906 (Tenn. 1947).

After careful consideration of the foregoing authorities, we are of the opinion that the doctrine of judicial estoppel has no application to the facts of the instant case, for Appellant's position in the instant case is in no wise inconsistent with her position in the underlying divorce action. We fail to find an inconsistency, sufficient to rise to the level necessary to invoke the doctrine of judicial estoppel, between Appellant's assertion in the underlying case that Appellee had billed her $X for his services, and her current assertion that $X does not reflect what she had agreed that she would pay for Appellee's services.

The fee owed by Appellant was determined to be no "less than $54,647.57 in attorney fees and $7,500.00 in accounting fees. . . ." based on the theory that Appellant was judicially

---

[5]The trial court granted summary judgment apparently only as to the issue of judicial estoppel. The order granting summary judgment makes no mention as to the reasonableness of the figure which Appellant was estopped from denying.

estopped from claiming she owed anything less than this amount. When considering the propriety of a grant of summary judgment, we are called upon to consider the evidentiary materials and pleadings in a light most favorable to the opponent of the motion, in this case the Appellant, and draw all reasonable inferences in the opponent's favor. ***Cowden***, 816 S.W.2d at 744. The special master's affidavit, upon which the estoppel argument is grounded, states that Mrs. Segal testified before him that "she had $57,647.57 in legal fees and $7,500.00 in accounting fees."[6] As the special master chose to use the term "had" as opposed to the word "owed" it is not unreasonable to infer from this statement that Appellant was merely stating what she had been billed, as opposed to what she thought she owed based upon her agreement with Appellee. It is also not unreasonable to infer from this statement that Appellant's answer was in response to the question of what her attorney fees were to date, and that her response was a truthful statement as to what she had been billed thus far.[7] We recognize that this appears to be merely a question of semantics. We believe, however, that the standard of review for summary judgment, which requires that we "draw all reasonable inferences in the opponent's favor[,]" ***id.***, warrants close scrutiny of the words used in documents relied upon by the trial court in granting such a motion.[8]

Our conclusion that judicial estoppel was inappropriately applied in this situation is strengthened by the fact that neither Appellee nor the special master claim that Appellant, at any time, testified that she had agreed to an hourly rate of $250.00. "It may . . . be laid down as a broad proposition that one, without mistake induced by the opposite party, who has taken a particular position deliberately in the course of litigation, must act consistently with it." ***Sartain v. Dixie Coal & Iron Co.***, 266 S.W. 313, 318 (Tenn. 1924). Appellant at no time took the "particular position" that the hourly rate charged was actually agreed to. The crux of Appellant's complaint is that the fee that was billed does not reflect the charges which she agreed to pay. The question of what, if any, fee arrangement the parties had agreed to was the question the Appellant had put before the court, and this question was never addressed.

### *The Parties' Agreement*

As noted, the court found the fees which Appellee charged to be reasonable in light of the fact that they had been deemed so in the underlying divorce action. As further noted, however, this finding of reasonableness attached to a sum which, at that time, might have appeared to have been agreed to by the parties. That underlying fee is now, however, in dispute. Therefore, a determination of what, if any, agreement was reached between the parties must be made prior to addressing the reasonableness question. On remand, if the court determines there was not an

---

[6]These figures do not match those contained in the memorandum opinion of the special master in the underlying divorce action which was incorporated into the final decree of divorce. That document merely stated that "[t]he Plaintiff's fees are in excess of $52,684.00."

[7]We do not have before us a transcript of these proceedings.

[8]This is especially true where, as is the case here, the document relied upon is created after the fact.

enforceable contract entered into by the parties, Appellee will be entitled to recover under a theory of quantum meruit.[9] *See White v. McBride*, 937 S.W.2d 796, 803 (Tenn. 1996) (stating that, excepting cases where an attorney "enters into a fee contract, or attempts to collect a fee that is clearly excesive. . . ." that "the principle of fairness . . . support[s] an award of fees on a quantum meruit basis.")

"Liability under quantum meruit is based on a legally implied promise to pay a *reasonable* amount for goods or services received." *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995) (emphasis added). Considering this fact, this Court has held that the factors to be considered when determining attorney's fees under quantum meruit include those used in determining the reasonableness of an attorney's fee generally. *See Johnson v. Hunter*, No. M1998-00314-COA-R3-CV, 1999 Tenn. App. LEXIS 783, at *24-25 (Tenn. Ct. App. Nov. 30, 1999) (listing factors upon which to base a determination of a reasonable fee and opining that "these factors are applicable to the determination of . . . attorney's fees under the theory of quantum meruit."). As such, the end result of the proceedings on remand may very well be that the Appellee receives the fees which he is requesting. However, in the absence of a written contract and where, as here, the parties differ as to the contents of an alleged oral agreement, the court should have undertaken an independent assessment of what represents a reasonable fee. The court in the instant case failed to follow this procedure, relying instead upon a finding of reasonableness based upon a figure now under dispute.

---

[9] The requirements for recovery under this theory were enumerated by this Court in *Castelli v. Lien*, 910 S.W.2d 420 (Tenn. Ct. App. 1995), where we stated:

Quantum meruit actions are equitable substitutes for contract claims. They enable parties who have provided goods and services to another to recover the reasonable value of these goods and services when the following five circumstances exist:

(1) there must be no existing, enforceable contract between the parties covering the same subject matter;

(2) the party seeking recovery must prove that it provided valuable goods and services;

(3) the party to be charged must have received the goods and services;

(4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and

(5) the circumstances must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them.

*Id.* at 427 (citations omitted).

In determining what is a reasonable fee the trial court has the "responsibility to exercise its own judgment and ascertain what sum is a reasonable fee, determined by application of all relevant factors." *Connors v. Connors*, 594 S.W.2d 672, 676 (Tenn. 1980). The factors to be used as guides in determining a reasonable attorney's fee may be summarized as follows:

1. The time devoted to performing the legal service.
2. The time limitations imposed by the circumstances.
3. The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.
4. The fee customarily charged in the locality for similar legal services.
5. The amount involved and the results obtained.
6. The experience, reputation, and ability of the lawyer performing the legal service.

*Id.*

The trial court in the present case failed to exercise its own judgment in determining what represents a reasonable fee based on these factors, relying instead upon the finding of reasonableness in the underlying case, a finding which was based on the apparent assumption that the parties had agreed to that fee. It follows, therefore, that the finding of reasonableness and the granting of partial summary judgment, being inextricably linked to the erroneous application of judicial estoppel, must be reversed.

### Reasonableness of Fees

Appellant requests that we determine whether Appellee's charges were unreasonable and excessive. It is well established that "[i]n determining what is reasonable compensation for legal services, each case must . . . depend upon its own peculiar facts." *Hail v. Nashville Trust Co.*, 212 S.W.2d 51, 56 (Tenn. Ct. App. 1948). As such, we find that the record on appeal is insufficient for us to fairly apply the *Connors* factors and determine this issue. We are confident, however, that upon remand, that the trial court will properly apply the *Connors* factors and arrive at a just result.

For the foregoing reasons, the trial court's granting of Appellee's motion for summary judgment on the basis of judicial estoppel was in error. Moreover, in the order granting summary judgment, a special master was appointed to determine what credits should be applied to the fee Appellant owed, a fee determined by the court based on the erroneous application of judicial estoppel. This special master's report became the basis for the final order in this case. As the determinations made by the special master appointed in this case were constrained by the erroneous summary judgment ruling, and the final order was a direct result of the special master's findings, we necessarily set aside the final judgment.

### *Conclusion*

We reverse the grant of summary judgment, reverse the final order, and remand the cause to the trial court for further proceedings not inconsistent with this opinion.  We tax the costs of this appeal to Appellee, Hal Gerber.


_____
DAVID R. FARMER, JUDGE