William E. SCHEELE, Jr.

v.

**HARTFORD UNDERWRITERS
INSURANCE COMPANY.**

Supreme Court of Tennessee,
at Knoxville.

Jan. 3, 2007 Session.

Feb. 28, 2007.

Jennifer M. Caywood, Knoxville, Tennessee, for the appellant, Hartford Underwriters Insurance Company.

Richard L. Burnette, Sevierville, Tennessee, for the appellee, William E. Scheele, Jr.

## OPINION

CORNELIA A. CLARK, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER and GARY R. WADE, JJ., joined.

Before this case was heard or decided by a Special Workers' Compensation Appeals Panel, we granted review to clarify whether insurance coverage for a sole proprietor existed under a workers' compensation policy despite the sole proprietor's failure to comply fully with the thirty-day notice requirement of Tennessee Code Annotated section 50–6–102(10)(B). We hold that coverage existed in this case because the sole proprietor complied substantially with the thirty-day notice requirement. We affirm the judgment of the trial court.

## BACKGROUND

In the fall of 2003, appellee Richard E. Scheele, Jr. was employed to work as a sole proprietor and an independent contractor for a Virginia company, Suburban Services ("Suburban"), as an installer of satellite dishes in east Tennessee. His start date was to be January 12, 2004. Suburban informed him that he would have to obtain his own workers' compensation insurance policy.

On December 10, 2003, Mr. Scheele met with George Abbott of Sevierville's Abbott Insurance Agency to inquire about a policy. Mr. Abbott explained to Mr. Scheele that in order to obtain workers' compensation insurance for himself as a sole proprietor, Mr. Scheele would, among other things, need to pay an initial premium, complete a Tennessee Department of Labor Form I–4, entitled "Election of Sole Proprietor or Partner to Come Within the Provisions of the Tennessee Workers' Compensation Law," sign and have notarized the I–4 form, and send the I–4 form to the Department of Labor. The I–4 form allows a sole proprietor to comply with Tennessee Code Annotated section 50–6–102(10)(B) (2005),[1] which requires a sole proprietor to give thirty days' notice before opting in to the workers' compensation system. Mr. Abbott told Mr. Scheele that his coverage would begin thirty days after the date that the Department of Labor stamped his I–4 form as having been received. Concerned about the prospect of paying a premium for no coverage during the thirty-day waiting period, Mr.

---

1. At the time of Mr. Scheele's injury, this provision was codified at Tennessee Code Annotated section 50–6–102(9)(B) (Supp.2003). The 2003 provision is identical to the provision currently in effect. Throughout this opinion, we refer to its present designation in the Code.

Scheele did not pay a premium or complete the I-4 form at that time.

On December 29, 2003, Mr. Scheele returned to Mr. Abbott's office to secure a workers' compensation policy. He filled out an application, gave Mr. Abbott a completed I-4 form, and submitted a $1,700 deposit premium,[2] $750 of which was his initial workers' compensation premium. Mr. Scheele specifically requested that the policy become effective on January 12, 2004, the day on which he planned to begin work with Suburban. Mr. Abbott sent the I-4 form to the Department of Labor, which stamped it as received on December 31, 2003. Mr. Abbott also sent to Suburban a certificate of insurance that demonstrated that Mr. Scheele had obtained the required coverages. The certificate indicated that coverage would begin on January 12, 2004.

Mr. Scheele's new insurer, Hartford, sent him a "welcome letter" dated January 14, 2004. This letter provided contact and other basic information about Hartford and also indicated that coverage under the policy began on January 12, 2004. Hartford also sent him a binder letter. In pertinent part, the binder stated:

SCHEELE, WILLIAME JR

. . . .

EFFECTIVE DATE: 01/12/04

POLICY NUMBER: 0349B76004

RE: WORKERS['] COMPENSATION AND EMPLOYERS LIABILITY POLICY BINDER

. . . .

THIS BINDER PROVIDES EVIDENCE OF COVERAGE UNTIL THE POLICY IS ISSUED.

. . . .

The policyholder must comply with the terms and conditions of the Tennessee Workers['] Compensation Plan policy. Failure to do so may result in cancellation. . . .

As planned, Mr. Scheele began working as a Suburban satellite dish installer on January 12, 2004. On January 21, 2004, Mr. Scheele fell from a roof and sustained a severe hip injury. He gave Hartford prompt notice of his injury. On January 22, 2004, Hartford issued to Mr. Scheele its full "Workers['] Compensation and Employers Liability Policy." Hartford also issued a policy endorsement. The endorsement changed Mr. Scheele's coverage date to January 30, 2004, thirty days after the Department of Labor stamped his I-4 form, and charged him $4,121 as additional premium for sole proprietor coverage. Hartford ultimately denied Mr. Scheele benefits because Hartford deemed him not to be covered under the policy at the time of his injury.

On November 4, 2004, Mr. Scheele filed suit against Hartford, Suburban, and Berkeley Risk Administrators, Suburban's workers' compensation insurer.[3] The complaint alleged, inter alia, that Mr. Scheele was due benefits under his policy with Hartford, or, in the alternative, that Mr. Scheele was due benefits from Suburban's carrier as a subcontractor.[4] Hartford answered, averring that Mr. Scheele did not

2. This sum also included deposit premiums for general liability and commercial automobile policies.

3. Mr. Scheele originally sued The Travelers Insurance Company. In a subsequent agreed order, the parties substituted Hartford for The Travelers because the complaint had named the wrong insurer.

4. Before trial, the trial court dismissed Suburban and Berkeley Risk Administrators from the case because it found that Mr. Scheele had maintained an independent contractor relationship with Suburban. Only Hartford, then, appealed the trial court's decisions to this Court. In its styling of this case, the Appellate Court Clerk listed all three defendants originally before the trial court. How-

meet the statutory definition of an "employee" under the workers' compensation statute because he had not complied with the thirty-day waiting period set forth in Tennessee Code Annotated section 50–6–102(10)(B).

At trial, the trial court found that Mr. Scheele's policy with Hartford covered him at the time of his injury because "[e]very document issued [by Hartford] prior to the injury shows that the effective date of the policy was January 12, 2004," leaving Mr. Scheele "every reason to believe that he was covered from January 12, 2004." The trial court also concluded that the thirty-day waiting period required by section 50–6–102(10)(B) was not mandatory; thus, Mr. Scheele's substantial compliance with the section's requirements was legally sufficient. After establishing coverage, the trial court awarded Mr. Scheele benefits based on a 60% permanent partial disability rating to the body as a whole.

Hartford appealed, asserting that the trial court erred when it found substantial compliance with section 50–6–102(10)(B) and coverage for Mr. Scheele under his policy. We granted review in this case, before it was heard or decided by a Special Workers' Compensation Appeals Panel, to clarify whether insurance coverage for a sole proprietor can exist under a workers' compensation policy despite the sole proprietor's failure to comply fully with the notice requirements of Tennessee Code Annotated section 50–6–102(10)(B).[5]

### DISCUSSION

### Standard of Review

■ In a workers' compensation case, "[r]eview of the trial court's findings of fact shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn.Code Ann. § 50–6–225(e)(2) (2005); *see also Rhodes v. Capital City Ins. Co.*, 154 S.W.3d 43, 46 (Tenn. 2004); *Perrin v. Gaylord Entm't Co.*, 120 S.W.3d 823, 825 (Tenn.2003). In workers' compensation cases, then, we ultimately conduct an independent review to determine where the preponderance of the evidence lies. *Lang v. Nissan N. Am., Inc.*, 170 S.W.3d 564, 569 (Tenn.2005). When we review questions of law, such as the construction of statutes or written contracts, we review them de novo without a presumption of correctness. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn.2006); *Perrin*, 120 S.W.3d at 826; *Corum v. Holston Health & Rehab. Ctr.*, 104 S.W.3d 451, 453 (Tenn.2003).

### Substantial Compliance with section 50–6–102(10)(B) is Sufficient

Hartford argues to us that Mr. Scheele was not an "insured" or covered employee under its policy at the time of his injury because he did not comply with the thirty-day filing requirement of Tennessee Code Annotated section 50–6–102(10)(B). Tennessee Code Annotated section 50–6–102(10)(B) provides that the definition of

"Employee" [under the workers' compensation statute] also includes a sole proprietor or a partner who devotes full time to the proprietorship or partnership and elects to be included in the definition of "employee" by filing written

---

ever, no issues have been raised by any party challenging the trial court's dismissal of Suburban and Berkeley Risk Administrators. Therefore, in our styling of this case, we have referenced only Hartford.

**5.** This is the sole issue on appeal. The parties do not contest the extent of the disability, the compensation rate, the amount of temporary and medical benefits due, or the amount of discretionary costs.

notice thereof with the division [of workers' compensation of the Department of Labor] at least thirty (30) days before the occurrence of any injury or death[.]

It is undisputed that the Department of Labor received Mr. Scheele's written notice on December 31, 2003, and that Mr. Scheele was injured on January 21, 2004.

This Court has previously held that similar notice provisions in the workers' compensation statutes are directory, rather than mandatory. *E.g., Presley v. Bennett,* 860 S.W.2d 857, 858 (Tenn.1993). In *Presley,* an insurance company denied workers' compensation coverage for a work-related injury because a subcontractor's notice of election of coverage had not been filed with the Department of Labor as required by Tennessee Code Annotated section 50–6–113 (1991). In analyzing whether coverage existed in this situation, we stated:

> In general, when determining whether a procedural requirement of a statute is directory or mandatory, the object is to ascertain the legislative intent by consideration of the entire statute, including its nature and purpose, and the consequences that would result from a construction one way or the other. Directory provisions only require substantial compliance. *Statutory provisions relating to the mode or time of doing an act to which the statute applies are ordinarily held to be directory rather than mandatory.*
>
> In determining whether the filing requirement at issue here is mandatory or directory, we are guided by the [General Assembly's] specific expression of its intent that the Workers' Compensation Act be given an equitable construction so that the objects and purposes of the Act may be realized and attained. In accordance with that expressed intent, we have recognized that it is our duty to interpret the workers' compensation

statutes so as to protect workers and their families from the economic devastation that, in many instances, can follow on-the-job injuries, and to ensure that injured employees are justly and appropriately reimbursed for debilitating injuries suffered in the course of service to the employer. Based on the foregoing legal principles, *we conclude that the [subcontractor] filing requirement is merely directory and that an election may be accomplished by substantial compliance with the workers' compensation statute.*

860 S.W.2d at 860–61 (emphasis added) (internal citations omitted).

When confronted with other notice provisions, we have reached nearly identical results. In *Perkins v. Enter. Truck Lines, Inc.,* 896 S.W.2d 123, 124 (Tenn.1995), we followed *Presley* and held that a notice requirement was directory, not mandatory, when a common carrier elected to provide workers' compensation benefits to a leased operator who operated one of the carrier's vehicles, but the carrier refused or failed under section 50–6–106(1)(B) (1991) to file the truck driver's written election to receive coverage on the common carrier's policy. On those facts, we found substantial compliance with the election requirement because an agent of the common carrier had told the driver that he was covered and because the common carrier agreed that he was covered.

More than a generation before *Presley,* we used a similar analysis to *Presley's* to find coverage when an employer had secured a workers' compensation policy, paid the premium, but failed to file a required notice of election with the state. *Commercial Ins. Co. v. Young,* 209 Tenn. 608, 354 S.W.2d 779, 785 (1962). Twelve years ago, a Special Workers' Compensation Appeals Panel found the precise notice requirement at issue in this case to be directory, not

mandatory. *Shaw v. Aetna Life & Cas. Ins. Co.*, No. 02S01–9406–CH–0034, 1995 WL 866413, at \*2 (Tenn. Workers' Comp. Panel Jan. 24, 1995).

■ We can find no meaningful distinction between the statutes or requirements at issue in the aforementioned cases and the statute at issue in the instant case. Thus, we find the thirty-day notice requirement of section 50–6–102(10)(B) directory, not mandatory. A sole proprietor's substantial compliance with the statute's thirty-day notice requirement is legally sufficient.

We have established no bright-line rule to measure substantial compliance with a workers' compensation notice provision. " 'The question as to whether there has been a sufficient compliance depends on the facts of the individual cases.' " *Presley*, 860 S.W.2d at 861 (quoting *Young*, 354 S.W.2d at 787). In *Presley*, the plaintiff, a subcontractor with a roofing firm, had agreed to be bound by the roofing firm's workers' compensation policy and had paid installment premiums to the firm. Neither party, however, made a filing necessary to place the plaintiff on the policy. We found substantial compliance with the notice provision at issue. *Id.*

■ By comparison, Mr. Scheele did far more. On December 29, 2003, Mr. Scheele fully completed the I–4 form, and Mr. Abbott sent it to the Department of Labor. The Department promptly received it and processed it, stamping it as received on December 31, 2003. In addition, Mr. Scheele went through the customary process of securing a policy by filling out an application, paying a deposit premium, having his agent submit the application to the insurer, and receiving temporary evidence of coverage in the form of a binder letter. He specifically requested and received a policy effective date of January 12, 2004. We have no difficulty concluding

that Mr. Scheele substantially complied with section 50–6–102(10)(B).

### Mr. Scheele Had Coverage Under His Policy

■ Hartford also argues that Mr. Scheele did not have coverage under his policy on the day of the accident because he had not paid the full premium due for such coverage. He had only paid the $750 deposit premium for a policy that covered zero employees on January 21, 2004, not the $4,121 additional premium due for coverage of him as a sole proprietor. This argument does not persuade us.

First, we note that finding coverage in this case is consistent with an established principle of Tennessee insurance law: "[t]he law will not permit the collection of a premium for insurance without the [insurer's] exposure to risk." *Young*, 354 S.W.2d at 786. If Hartford's argument were to prevail, Mr. Scheele would have paid a month's premium, but Hartford would have assumed no risk until January 30, 2004. Our law does not favor this outcome.

■ When we construe the particular policy that Mr. Scheele held on January 21, 2004, the date of his accident, we conclude that Mr. Scheele enjoyed coverage. At the time of Mr. Scheele's injury, Hartford had not yet issued him a full insurance policy. Rather, it had only issued the binder quoted above. A binder is a temporary contract of insurance under which the insurer is liable for losses that occur during a period covered by it. *Spangler v. State Farm Fire & Cas. Co.*, 221 Tenn. 37, 424 S.W.2d 191, 192 (1968). Though temporary, binders are fully valid insurance contracts and are interpreted as such. *See, e.g., id.* at 192–93; *Polk & Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538, 541 (Tenn.1989).

In construing an insurance contract, "the paramount rule ... is to ascertain the intent of the parties. That intent is to be derived from the four corners of the policy giving effect to all parts." *Blue Diamond Coal Co. v. Holland–America Ins. Co.*, 671 S.W.2d 829, 833 (Tenn.1984) (internal citations omitted). Because the binder states that "[t]he policyholder must comply with the terms and conditions of the Tennessee Workers['] Compensation Plan policy," we must examine the terms of the full insurance policy that Hartford ultimately issued to Mr. Scheele to determine whether the premium he had paid was sufficient to maintain coverage under it.[6]

Under the heading, "PART FIVE–PREMIUM," the full policy states that the "premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy." On January 12, 2004, the premium listed on the "Information Page" was $750; Hartford did not issue any endorsements until after the accident. This policy provision plainly indicates that the existence of coverage at a particular point during the policy's effectiveness is not tied to the contemporaneous payment of the precise sums due to cover any risks assumed. Hartford's policy clearly postpones that day of financial reckoning until after the end of the policy's effective period. Therefore, we conclude that Mr. Scheele's $750 premium payment at the time of his accident was sufficient to maintain his coverage, even though he later was obligated to pay much more to compensate the insurer for the risk it assumed on his behalf.[7]

## CONCLUSION

For the reasons stated above, we hold that Mr. Scheele had coverage under his workers' compensation policy. He is entitled to the benefits awarded to him by the trial court. The judgment of the trial court is affirmed in all respects.

The costs of this appeal, including the mediator's costs requested pursuant to Tennessee Supreme Court Rule 37, section 11(a)(iii), are taxed to the appellant, Hartford Underwriters Insurance Company, and its sureties, for which execution may issue if necessary.

6. In its brief, Hartford contends that the binder only indicates "the effective dates of the policy and state[s that] the coverages (in the policy) are subject to the laws of the state of Tennessee." We read the language in the binder quoted above to refer to Hartford's standard workers' compensation policy, not to the workers' compensation laws of Tennessee. Even if this language is susceptible to both interpretations, we must credit our interpretation because it favors coverage. *See*

*American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 815 (Tenn.2000); *Monroe County Motor Co. v. Tenn. Odin Ins. Co.*, 33 Tenn.App. 223, 231 S.W.2d 386, 395 (1950).

7. At trial, Mr. Scheele testified, and Hartford does not dispute, that he ultimately paid the full premium for sole proprietor coverage under his policy.